[No. F011988. Fifth Dist. Nov. 16, 1990.]

RICHARD FARLEY et al., Plaintiffs and Appellants, v. EL TEJON UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

Chain, Younger, Lemucchi, Cohn & Stiles, Paul A. Welchans and Curtis E. Floyd for Plaintiffs and Appellants.

Clifford, Jenkins & Brown and Patrick J. Osborn for Defendant and Respondent.

## OPINION

BEST, P. J.—

### STATEMENT OF THE CASE

Appellants, the surviving parents and grandfather of deceased minor Michael Farley, appeal from the judgment entered following the granting of respondent El Tejon Unified School District's motion for summary judgment.

Richard and Carla Farley stated a cause of action for wrongful death specifically alleging that respondent "negligently and carelessly owned, rented, leased, bailed, operated, controlled, maintained, repaired, supervised and entrusted a school bus upon which EL TEJON UNIFIED SCHOOL DISTRICT STUDENT MICHAEL FARLEY, deceased, age at time of death 7 years, was a passenger so as to disembark MICHAEL FARLEY, deceased, on the west side of Lebec Road without signalling the red school bus flashers, and other acts and omissions, thus allowing another motor vehicle to strike and injure MICHAEL FARLEY, deceased, as he crossed from the west side to east side of Lebec Road."

Gordon Farley stated a separate cause of action for negligent infliction of emotional distress resulting from "witnessing the severe and fatal injuries sustained by his grandson, . . ."

The issue on appeal is whether the court erred in determining no triable issues of material fact existed and that respondent was entitled to a judgment as a matter of law.

We reverse.

## STATEMENT OF FACTS

Respondent in its moving papers and appellants in their opposition papers relied exclusively on deposition testimony to set forth the material facts. The undisputed facts were substantially as follows.

On October 27, 1986, Mary Ann Nowak was driving bus No. 9, owned and operated by respondent, on a route which included a bus stop located on the west side of Lebec Road across the street from the Lebec Market. All of the children who get off at this bus stop live on the west side of Lebec Road. Approximately eight or nine children, including Michael Farley, got off bus No. 9 at the Lebec Market stop on this day. A group of five or six children were walking north on the west side of Lebec Road when Michael Farley moved into the southbound lane of the roadway where he was struck by the side of a small camper. The school bus had driven away and was out of sight at the time of the accident. Gordon Farley was waiting across the street from the bus stop and was not supervising Michael as he started to cross the street immediately before the accident.

Appellants' opposition papers included the following additional facts known to respondent's employees prior to the date of this accident: Children from respondent's school were regularly picked up by family members at the Lebec Market across the street from the bus stop. Respondent's employees knew that children crossed the street at the Lebec Market bus stop to go to the Lebec Market and post office and respondent had been advised that its buses were stopping there without activating their red light flashers. Respondent's bus drivers had told the students not to cross the street at the Lebec Market stop until the bus was out of sight. Maricopa High School buses and Bakersfield High School buses activated their red light flashers at the Lebec Market stop and this was known to both respondent's director of transportation and its regular bus driver. Additionally, under the date of September 23, 1983, a letter was sent to the parents of children attending El Tejon School as follows:

"Dear Parents,

"We have a very dangerous problem that has been happening at the Lebec Market bus stop that we need your assistance in taking care of.

"Our bus drivers have informed students repeatedly that they are not to cross the street to the market either in front of, or behind the bus after getting off the bus. A number of students have not been willing to give their cooperation to a sensible rule for their own safety.

"Please advise your children that this is a practice that is a hazard to their safety.

"If we continue to have this problem, I will direct the bus driver to write transportation referrals that could ultimately result in loss of bus transportation privileges.

"Thank you for your help in this matter.
"Respectfully,
"R. Smith
"Principal"

## DISCUSSION

■ The standard of review of a summary judgment is limited to the determination of whether the declarations filed in the trial court gave rise to a triable issue of fact. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1978) 22 Cal.3d 302, 309 [148 Cal.Rptr. 918, 583 P.2d 777].) The court must strictly construe the affidavits of the moving party and liberally construe those of his opponent. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].)

Appellants contend that respondent violated Education Code section 44808 and Vehicle Code section 22112 and was therefore negligent in its operation of the school bus owned by respondent.

Education Code section 44808 provides in pertinent part: "Notwithstanding any other provision of this code, no school district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . has undertaken to provide transportation for such pupil to and from the school premises, . . . has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district . . . shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district . . . ."

Vehicle Code section 22112 provides: "The driver of a schoolbus shall operate the flashing red signal lamps required on the schoolbus at all times

when children are unloading from the schoolbus to cross a highway or private road or when the schoolbus is stopped for the purpose of loading children who must cross a highway or private road to board the schoolbus, except that the signal lamps shall not be operated at any place where traffic is controlled by a traffic officer or official traffic control signal. The schoolbus signal lamps shall not be operated at any other time."

While neither the minute order nor the written order contains any indication of the trial court's reasons for granting the motion for summary judgment, the transcript of the hearing indicates the reasons were: (1) the nonexistence of a duty of care for the safety of Michael at the time of the accident; and (2) the acts or omissions of respondent, or of its employees, were not a proximate cause of the accident.

■ We first address the question of whether a legal duty of care existed because absent such a duty and a breach of that duty no issue of proximate causation is reached. (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 6 [31 Cal.Rptr. 847].) The existence of the requisite duty of care is a question of law. (*Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 468 [210 Cal.Rptr. 7].) ■ In this regard, we first note that respondent's reliance on Education Code section 44808 as providing a grant of immunity is misplaced. In *Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851], our Supreme Court said concerning that statute: "That the 'reasonable care' exception in the statute is not accidental is clear from the legislative history. The original bill, passed by the Assembly, was identical to the current statute but did not include the final phrase about reasonable care. That phrase was added by Senate amendment (4 Sen. J. (1972 Reg. Sess.) p. 6247) and then approved unanimously by the Assembly. (4 Assem. J. (1972 Reg. Sess.) p. 7049.) The intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates." (*Id.* at p. 517, fn. 2; see also *Perna* v. *Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292, 296 [192 Cal.Rptr. 10].)

■ Education Code section 44808 is simply a recognition by the Legislature of the law existing prior to its enactment that once a school district undertakes to provide transportation for its pupils it has a duty to exercise reasonable care under the circumstances. "A school district is under no legal duty to supply transportation to its pupils. [Citations.] Once it does so, no one would deny a concomitant obligation to provide a reasonably safe system." (*Raymond* v. *Paradise Unified School Dist., supra*, 218 Cal.App.2d 1, 9.) ■ Respondent acknowledges this principle but argues no duty of care existed in this case at the time of the accident: "However, the last paragraph of § 44808 states that liability for the safety of any such pupil

exists only while the pupil is or should be under the immediate and direct supervision of an employee of the District. [¶] . . . Further, inasmuch as the accident occurred when the school bus was no longer in sight, it cannot be said that decedent was killed at a point in time when he was, or should have been, under the immediate and direct supervision of any employee of respondent."

Respondent's argument begs the question. Whether or not Michael should have been "under the immediate and direct supervision of an employee of the District" depends on whether the exercise of reasonable care under the circumstances required respondent's school bus driver to supervise Michael's crossing of Lebec Road after being discharged from the bus.

Appellants argue that reasonable care under the circumstances required the schoolbus driver to activate her flashing red signal lamps while discharging the pupils and until they had crossed the roadway: "Both the school bus drivers and the Director of Transportation were well aware of the fact that the school children regularly crossed from the west side of Lebec Road to the east side of the road at this bus stop. In fact, the school bus drivers had told the children not to cross the street until after the bus was out of sight. It is apparent that the 'children are unloading from the school bus to cross a highway' at the school bus stop. The measure of the duty is, therefore, well defined under *Vehicle Code* Section 22112 which specifically provides that flashing red lights be activated on the school bus to allow the children to cross the highway."

Appellants' argument presupposes that Vehicle Code section 22112 applies under the circumstances of this case. Whether it does apply depends upon the meaning of the words "when children are unloading from the schoolbus to cross a highway" as used in the statute. If children were required to cross a highway in order to return to their homes after leaving the bus we believe the statute would apply just as it does when children "must cross a highway . . . to board the schoolbus" as specifically provided in the statute. However, when, as here, all the pupils being discharged from the school bus live on the same side of the highway as the school bus stop, we are of the view that the Legislature could not have intended to place a mandatory duty on the school bus driver to comply with the provisions of Vehicle Code section 22112. To construe the statute otherwise would be impractical and place an intolerable burden on the already overburdened and underfunded school districts in this state.

In 1976, the Legislature placed the responsibility of adopting regulations relating to the safe operation of school buses with the California Highway Patrol by enacting Education Code section 39831 which, as amended in

1980, provides in pertinent part: "The State Board of Education shall adopt reasonable regulations relating to the use of schoolbuses by school districts and others. Such regulations shall not include the safe operation of schoolbuses which regulations shall be adopted instead by the Department of the California Highway Patrol pursuant to Section 34500 of the Vehicle Code.

"The Department of the California Highway Patrol shall adopt regulations relating to the safe operation of schoolbuses . . . ."

Pursuant to this delegation of legislative authority, section 1227 of title 13 of the California Code of Regulations (hereafter referred to as regulation 1227) was adopted, as follows:

"1227 School Bus Stops.

"The following requirements shall apply at school bus stops made to receive or discharge pupils:

"(a) Designated Stops. The driver shall stop to receive or discharge pupils only at a school bus stop designated by the school district superintendent or authorized by the superintendent for school activity trips.

"(b) Pupils Crossing Highway. When pupils must cross the highway or private road upon which the school bus is stopped, at a location where traffic is not controlled by a traffic officer or official traffic control signal, the school bus driver shall in addition to the requirements specified in Vehicle Code Section 22112:

"(1) Check for approaching traffic in all directions to the school bus to ensure that it is safe to operate the flashing red signal (cross-over) lamps pursuant to Vehicle Code Section 22112.

"(2) Before opening the entrance-exit door, ensure that it is safe for pupils to exit the school bus and to cross the highway or private road.

"(3) Escort across the highway or private road all pupils who attend a prekindergarten or elementary school (a public or private school that does not offer education beyond the eighth grade). The driver may use an approved hand-held stop sign while escorting any pupil. The driver is not required to escort any pupil at a location where traffic is controlled by a traffic control signal, unless required to do so by the school district.

"(4) Require all pupils to walk in front of the bus as they cross the highway.

"(5) Ensure that all discharged pupils who must cross the highway have crossed safely and all other discharged pupils are a safe distance from the bus before setting the bus in motion."

We note that the above regulation in subdivision (b) makes reference to, "When pupils must cross the highway or private road upon which the school bus is stopped," and in subdivision (b)(5) to "all discharged pupils who must cross the highway . . . ." It is clear that the regulation was intended to apply to pupils who *must* cross the highway or private roadway whether to board the school bus or after being discharged from the school bus. It is also clear that the regulation assumes that Vehicle Code section 22112 applies in both situations.

If children are on one side of a highway or roadway at the time the school bus stops at a designated bus stop on the other side of the highway, it is readily apparent to the bus driver that the children *must* cross the highway or roadway in order to board the bus. In such case, on what side of the highway or roadway the children lived would be of no significance. However, when pupils are being discharged from the bus it is not readily apparent to the driver that the pupils, or any of them, *must* cross the highway or roadway.

We are of the opinion that before a duty of compliance with Vehicle Code section 22112 and regulation 1227 may be imposed upon a school bus driver, evidence must be presented that the driver, or the school district through its officers or employees, knew, or in the exercise of reasonable care, should have known, that at least one pupil being discharged from the bus must cross the highway or roadway to get to his or her place of residence or other customary after school destination. We are of the further opinion, however, that whether such a duty of compliance with these statutory provisions existed in the instant case is not dispositive. Apart from any mandatory duty which might be found to exist in a particular case because of Vehicle Code section 22112 and regulation 1227, the law is clear, as we have earlier indicated, that once a school district undertakes to provide transportation for its pupils it has a duty to exercise reasonable care under the circumstances. The ultimate issue here, therefore, is whether the school district, acting through its officers and employees, was negligent under the circumstances as shown by the evidence.

■ In order to prevail on its motion for summary judgment, respondent had the burden of negating every alternative theory of liability presented by the pleadings. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 271, fn. 1 [179 Cal.Rptr. 30, 637 P.2d 266]; *Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) ■ In addition to alleging negligence in discharging Michael Farley "without signalling the red school bus flashers," appellants' complaint alleged negligence of respondent in general terms.

The evidence presented in this case established that respondent, through its bus driver employees, its director of transportation and the principal of El Tejon School, was aware prior to the subject accident that children being discharged from the school bus at the Lebec Market bus stop customarily crossed Lebec Road to meet family members and be transported the rest of the way to their homes; that respondent was aware that this practice was a hazard to the children's safety is demonstrated by the principal's September 23, 1983, letter to parents and the school bus drivers' instructions to the children not to cross Lebec Road until the school bus was out of sight. Having undertaken to provide transportation to its pupils to and from the school premises, respondent had an obligation to supervise the children during that transportation and a duty to provide a reasonably safe system. Whether the exercise of reasonable care under the circumstances of this case required respondent to supervise the children's safe crossing of Lebec Road is a question to be resolved by the trier of fact. Should the trier of fact find that respondent was negligent under the circumstances, it follows that whether the act or omission forming the basis of such finding is a proximate cause of the accident and plaintiffs' resulting damages would also be a question of fact. Accordingly, triable issues of fact exist, and the court erred in granting summary judgment.

The judgment is reversed. Appellants to have their costs.

Ardaiz, J., and Thaxter, J., concurred.

A petition for a rehearing was denied December 13, 1990, and the opinion was modified to read as printed above.