[No. C050514. Third Dist. June 21, 2006.]

ROBERT C. BASSETT et al., Plaintiffs and Appellants, v.
LAKESIDE INN, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

COUNSEL

Thomas J. Dunnion, Jordan Morgenstern and Gerard A. Rose for Plaintiffs and Appellants.

Laxalt & Nomura, Angela M. Bader; Jacobson, Hansen, Najarian & McQuillan and Leith B. Hansen for Defendants and Respondents.

OPINION

MORRISON, Acting P. J.—After their daughter was killed by a drunk driver while crossing the street on her way to school, plaintiffs Robert C. and Teddi Bassett brought suit against the driver and two other individuals and numerous entities for wrongful death. They appeal from a judgment of dismissal after the trial court sustained the demurrers of defendants Lakeside Inn, Peter Douthitt, Lee Smith, and Lake Tahoe Unified School District (the District) without leave to amend. The Bassetts contend Lakeside Inn and security guards Douthitt and Smith contributed tortiously to the accident because they had assumed a duty to protect patrons of the Lakeside Inn and the public and they breached that duty by escorting an obviously drunk patron to his car and allowing him to drive off. The Bassetts contend the District had liability because it designated a schoolbus stop in a dangerous intersection. We agree with the trial court that Lakeside Inn and its employees had no duty to the Bassetts' daughter, and that the District has immunity under Education Code section 44808 because the accident occurred off campus and outside the supervision of the District. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Because the matter arises after demurrer has been sustained, we must treat all properly pled facts as true. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The operative complaint as to Lakeside Inn, Douthitt, and Smith is the second amended complaint. The operative complaint as to the District is the third amended complaint.

On September 2, 2003, about 7:00 a.m., Marissa Bassett was on her way to her first day of high school. As she crossed the street at a crosswalk at 15th Street and Eloise Avenue in South Lake Tahoe, she was struck by a car driven by Jesse Whitworth, a drunk driver. She died later that day. The District had designated a schoolbus pickup point at that intersection.

Throughout the night before the accident, Whitworth and four companions engaged in a night of partying, with excessive consumption of alcohol. Within an hour before the accident, Whitworth and his companions were finishing up their night of partying at Taberna Restaurant, located within Lakeside Inn. They were intoxicated, loud, and obnoxious. Someone called the security guards. Douthitt and Smith responded and told the Whitworth group to quiet down. Ten minutes later, Douthitt and Smith responded again and escorted Whitworth and his companions to Whitworth's car. The security guards watched as Whitworth drove off onto an adjacent thoroughfare.

Douthitt and Smith were aware that Whitworth and his companions were intoxicated, incapable of operating a vehicle safely, and would be driving on public roads. Notwithstanding this knowledge, they did nothing to stop Whitworth from driving off. In fact, they encouraged him to do so.

Within one year following the accident, the Bassetts brought suit, naming as defendants Whitworth, Lakeside Inn, Douthitt and Smith, the City of South Lake Tahoe, State of California Department of Transportation, California Transportation Commission, El Dorado County, and the District. The complaint sought monetary damages for wrongful death and a survivor's action against all defendants and against Whitworth for assault and battery.

Douthitt and Smith demurred, asserting the complaint did not state a cause of action against them. Their demurrer was sustained with leave to amend. The Bassetts amended the complaint and Douthitt and Smith again demurred.

The Bassetts filed a second amended complaint. By stipulation of the parties, the demurrer of Douthitt and Smith, which was joined by Lakeside Inn, applied to the second amended complaint. The court sustained the demurrer without leave to amend.

The Bassetts filed a third amended complaint. The District demurred to this complaint, requesting that the trial court take judicial notice that the District did not own the public property where the accident occurred. The trial court sustained the demurrer without leave to amend.

A judgment of dismissal was entered as to Lakeside Inn, Douthitt, Smith, and the District. The Bassetts appealed.

## DISCUSSION

### I. Demurrer of Lakeside Inn, Douthitt, and Smith[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Demurrer of Lake Tahoe Unified School District

The Bassetts' theory of the District's liability was that the District had designated a dangerous location for its schoolbus stop. The third amended complaint alleged that the intersection at 15th Street and Eloise Avenue had no traffic control signs. This absence together with the presence of such signs on nearby streets and highways prompted local motorists to use 15th Street as a shortcut to Highway 89 at unsafe speeds. There was an S-curve just before the intersection that distracted drivers and discouraged them from focusing on the intersection; it positioned them so their line of sight of the intersection was obscured by trees. The presence of a residential structure also obscured the line of sight, making it difficult to discern the intersection ahead, and distracted drivers, making it difficult or impossible to see pedestrians in or near the intersection. The presence of a pathway encouraged pedestrians to use the northwest portion of the intersection at a location where it was difficult for motorists to see them. The District's designation of a schoolbus pickup point where the pathway meets the intersection "encouraged and enticed" students to use the intersection at a point where it was difficult for drivers to see pedestrians.

The trial court sustained the District's demurrer without leave to amend on the basis that there was no evidence the District owned or controlled the bus stop and the District had immunity under Education Code section 44808.

■ "The liability of public entities is entirely statutory. ([Gov. Code,] § 815, subd. (a).)" (*City of Huntington Beach v. Petersen Law Firm* (2002) 95 Cal.App.4th 562, 567–568 [115 Cal.Rptr.2d 568].) ■ The Bassetts rely on Government Code section 835, which provides that a public entity may be liable for an injury caused by the dangerous condition of its property, "[e]xcept as provided by statute[.]" A " 'dangerous condition' " is one that creates a substantial risk of injury when such property or adjacent property is used with due care in a reasonably foreseeable manner. (Gov. Code, § 830, subd. (a).)

The public property itself need not be dangerous; "hazards present on adjoining property may create a dangerous condition of public property when users of the public property are necessarily exposed to those risks." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139,

---

[*]See footnote, *ante*, page 863.

149 [132 Cal.Rptr.2d 341, 65 P.3d 807].) For example, users of a model airplane park were at risk from power lines on adjacent property in *Branzel v. City of Concord* (1966) 247 Cal.App.2d 68 [55 Cal.Rptr. 167], and users of a public street were at risk from a railroad right-of-way in *Holmes v. City of Oakland* (1968) 260 Cal.App.2d 378 [67 Cal.Rptr. 197].

The Bassetts contend the location of the bus stop, adjacent to a dangerous intersection, constituted a dangerous condition of public property, citing *Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th 139. In *Bonanno,* the plaintiff was seriously injured when she stepped into a cross-walk on her way to a bus stop. The Supreme Court held the location of a bus stop may be a dangerous condition of public property. (*Id.* at p. 144.) The transit authority owned and controlled the stop because it had authority to remove it, even though the county could veto the location of any bus stop. (*Id.* at p. 147, & fn. 2.) That plaintiff was injured on adjacent property that the transit authority did not own or control did not eliminate the transit authority's liability. The location of the bus stop caused users to be at risk from the adjacent dangerous intersection and the plaintiff was using the bus stop when she crossed the street to reach it. (*Id.* at p. 151.)

 Liability under Government Code section 835 applies only where the public entity owns or controls the property. (Gov. Code, § 830, subd. (c).) The District argues, and the trial court found, that the District did not own or control the bus stop. The District apparently established, through judicial notice, that it did not own the crosswalk or the property on which the bus stop was located, but that is not the issue. The District's superintendent has authority to designate the location of the schoolbus stop. (Cal. Code Regs., tit. 13, § 1238, subd. (a).) That power may be sufficient to constitute ownership or control of the bus stop for purposes of Government Code sections 830 and 835. (See *Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th at p. 151 [determining transit authority "owned and controlled its own bus stop" when it had power, subject to county's veto, to remove it].)

 We note that in the third amended complaint, there is no allegation the designation of the schoolbus pickup spot caused or contributed to the accident. In the original, the first amended, and the second amended complaints, the Bassetts alleged their daughter was struck and killed "as she traversed a crosswalk on her way to a school bus pickup area." In the third amended complaint, the operative one for the District's demurrer, this allegation is deleted. The complaint merely alleges the Bassetts' daughter was crossing the street on her way to school. There is no allegation that she intended to take the bus. Generally, "[a]n amended complaint 'supersedes the original and furnishes the sole basis for the cause of action. [Citations.] The

original complaint is dropped out of the case and ceases to have any effect as a pleading, or as a basis for a judgment. [Citation.]' " (*Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 901 [16 Cal.Rptr.2d 675].)

■ At oral argument, however, counsel for plaintiffs stated the complaint could be amended to state that Marissa was on her way to the schoolbus stop and intended to take the bus to school. In considering whether there is a reasonable probability a defect in the complaint could be cured by amendment, courts may consider counsel's statements at oral argument. (See *Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 867 [14 Cal.Rptr.3d 731]; *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408 [261 Cal.Rptr. 437].) Accordingly, the complaint could be amended to allege the District's location of the schoolbus stop was a dangerous condition of public property and Marissa was using the bus stop, crossing the street to reach it, when she was killed.[1]

A school district's liability, however, is limited by Education Code section 44808 (section 44808), which provides: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

■ "Under Education Code section 44808, the District would not be liable for injuries off campus and after school unless they were the result of the District's negligence occurring on school grounds or were the result of some specific undertaking by the District, which was then performed in a negligent manner." (*Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1264 [36 Cal.Rptr.3d 724].) "In essence, the

---

[1] At oral argument, the District stressed the facts of *Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th 139, that the bus stop could be reached from the south by only two routes, both of which were dangerous, and the plaintiff chose the less dangerous of the two. The District suggests the complaint was defective because there was no allegation that the bus stop could be reached only by crossing a dangerous intersection. Factual matters of this type are better resolved by a motion for summary judgment.

section grants a district immunity unless a student was (or should have been) directly supervised during a specified undertaking." (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 129 [65 Cal.Rptr.2d 280].) The portion of section 44808 that refers to failing to exercise reasonable care does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the mentioned undertakings. (*Guerrero v. South Bay Union School Dist.* (2003) 114 Cal.App.4th 264, 271 [7 Cal.Rptr.3d 509].)

A public entity's liability, including that of a school district, must be based on statute. (*Mosley v. San Bernardino City Unified School Dist., supra*, 134 Cal.App.4th 1260, 1263.) Section 44808 begins, "Notwithstanding any other provision of this code," and so could be read to provide immunity only for liability imposed under the Education Code. The statute has not been interpreted so narrowly. In *Castro v. Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232, 235 [126 Cal.Rptr. 537], the court held the predecessor to section 44808 limited the liability of employees of a school district who otherwise had liability for negligent acts under Government Code section 815.2.

The Bassetts contend that section 44808 does not provide immunity because the District undertook to provide transportation to the school and "failed to exercise reasonable care under the circumstances" in designating the location of the bus stop. They rely on *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292 [1 Cal.Rptr.3d 712], in which a student was seriously injured when she was struck by a car while crossing the street to enter the school grounds through an open school yard gate. The District argued it was immune under section 44808 because it had no duty to supervise students going to and from school. The court held there was no immunity under section 44808 because liability was not based on lack of supervision, but on "an open gate that enticed children to cross an adjacent dangerous intersection." (110 Cal.App.4th at p. 301.)

In finding section 44808 immunity did not apply, the *Joyce* court relied on *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 517 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*) (*Joyce v. Simi Valley Unified School Dist., supra*, 110 Cal.App.4th at p. 301.) In *Hoyem*, a student left school without permission during the schoolday and was injured by a motorist. The child and his mother sued the school district alleging negligent supervision. The trial court sustained the defendant's demurrer and dismissed the case. (*Hoyem, supra*, 22 Cal.3d at p. 512.)

The Supreme Court reversed, finding a school district has a duty to supervise students while on school premises and may be liable for failure to

exercise reasonable care in that supervision. (*Hoyem, supra,* 22 Cal.3d at pp. 513–516.) The court rejected the argument that the school district was immune under section 44808. First, noting that section 44808 grants a school district immunity for injuries to students not on school property, the court stated: "the section goes on explicitly to withdraw this grant of immunity whenever the school district, inter alia, '*has failed to exercise reasonable care under the circumstances.*' " (*Hoyem, supra,* 22 Cal.3d at p. 517, original italics.) In a footnote, the court noted the reasonable care exception was not accidental, but added by Senate amendment. "The intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates."[2] (*Id.* at p. 517, fn. 2.)

Second, the *Hoyem* court discussed the decisional history preceding section 44808 and concluded the Legislature intended to limit the school district's liability in very different circumstances. Case law "demonstrated[d] that the Legislature was principally concerned with limiting a school district's liability for injuries to pupils either before or after school hours while children were either going to school or coming home after school." (*Hoyem, supra,* 22 Cal.3d at p. 517.)

■ While the language of *Hoyem* could be read to withdraw immunity whenever a school district fails to exercise reasonable care, it has not been so interpreted since. (E.g., *Wolfe v. Dublin Unified School Dist., supra,* 56 Cal.App.4th 126, 129; *Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 48–49 [242 Cal.Rptr. 752].) Indeed, the *Hoyem* court explained, "defendant's liability in this case is posited not on an alleged failure to supervise [the student] when he was off the school premises, but rather on an alleged failure to exercise due care *in supervision on school premises.*" (*Hoyem, supra,* 22 Cal.3d at p. 523, original italics.) Thus, *Hoyem,* consistent with the language of section 44808, withdraws immunity only when the student is or should be under the school's direct supervision. To the extent *Joyce v. Simi Valley United School Dist., supra,* 110 Cal.App.4th 292, seeks to withdraw section 44808 immunity when there is a dangerous condition of property, regardless of whether the injured student was or should have been supervised, we respectfully disagree and decline to follow it.

■ Since Marissa was injured not on school property and not while she was or should have been under the direct supervision of the school, section 44808 applies and the District has immunity. The trial court did not err in sustaining the District's demurrer without leave to amend.

---

[2] We agree with the observation in *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1034 [4 Cal.Rptr.3d 385]: "This statement is perplexing, since the very concept of immunity presupposes a failure to exercise reasonable care."

## DISPOSITION

The judgment is affirmed.

Robie, J., and Cantil-Sakauye, J., concurred.