Filed 6/9/25; Certified for Publication 7/2/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENYA TAYLOR, Plaintiff and Respondent, v. LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and Appellant. | B333718 (Los Angeles County Super. Ct. No. 20STCV33128) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Michael B. Harwin, Judge. Reversed.

Pillsbury Winthrop Shaw Pittman, Robert L. Wallan, and Pauleen Truong, for Defendant and Appellant.

The Vartazarian Law Firm, Steve Vartazarian, Matthew J. Whibley; Wilshire Law Firm, Daniel DeSantis; and The Ehrlich Law Firm, Jeffrey I. Ehrlich, for Plaintiff and Respondent.

———————————————

Kenya Taylor hired Los Angeles Unified School District (LAUSD) employee Tyler Martin-Brand to babysit her six-year-old son, Dayvon, at Martin-Brand's home during the winter break in 2019.  Tragically, Martin-Brand killed Dayvon.  Taylor sued LAUSD on the theory that it negligently hired and supervised Martin-Brand.  A jury agreed and awarded Taylor $30 million in damages.  LAUSD now appeals from the trial court order denying its motion for judgment notwithstanding the verdict (JNOV) and from the judgment.

We conclude LAUSD is immune from liability for Dayvon's off-campus death pursuant to Education Code section 44808.[1]  We therefore reverse the order and judgment and direct the trial court to enter judgment for LAUSD.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, LAUSD hired Martin-Brand as a part-time playground worker and supervisor for the Beyond the Bell after-school program.  Martin-Brand worked at Playa Vista Elementary School.  In 2019, LAUSD assigned Martin-Brand to supervise a summer program at Normandie Elementary School.  Dayvon attended the Normandie program that summer.  At the end of the summer, Martin-Brand returned to work at Playa Vista.  Dayvon never attended the after-school program at Playa Vista.

On December 23 or 24, 2019, Taylor asked Martin-Brand to babysit Dayvon during the LAUSD winter break.  Dayvon was six years old at the time.  Although Taylor did not know where

[1]    All undesignated statutory citations are to the Education Code.

Martin-Brand lived and knew little about his background, she obtained Martin-Brand's telephone number and arranged for him to pick up Dayvon and babysit him at Martin-Brand's home. Taylor trusted Martin-Brand because he worked for LAUSD. She did not tell anyone she was going to ask Martin-Brand to babysit Dayvon, or that she had made the babysitting arrangements. One of Martin-Brand's supervisors later learned he had been babysitting students, but the supervisor was unaware of that fact before Martin-Brand babysat Dayvon. LAUSD policy prohibited LAUSD employees from interacting with students off campus except during school-sponsored activities.

When Martin-Brand brought Dayvon home to Taylor on December 26, Dayvon was "expiring."[2] He died later that day from blunt trauma caused by physical beating.

In August 2020, Taylor filed a wrongful death lawsuit against LAUSD.[3] The complaint asserted causes of action for: (1) violation of a mandatory duty; (2) negligent hiring, retention, and supervision; (3) negligence; (4) negligence per se; (5) survival action; and (6) wrongful death. The complaint alleged that

---

[2] The parties offered evidence that appeared to conflict regarding the amount of time Dayvon was in Martin-Brand's care. Taylor did not testify at trial. In her deposition testimony read to the jury, Taylor appeared to indicate that Martin-Brand babysat Dayvon only on the afternoon of December 26. However, in an interrogatory response that was read to the jury, Taylor stated Dayvon was also with Martin-Brand at Martin-Brand's home from December 23 to 25, 2019.

[3] The complaint also named as defendants Martin-Brand, Los Angeles County, and the City of Los Angeles. Taylor dismissed her claims against those defendants before trial.

LAUSD negligently hired, retained, and supervised Martin-Brand, and that this negligence was a substantial factor in harming Taylor and Dayvon.

The case proceeded to trial. At the pretrial conference, Taylor agreed to dismiss all causes of action except for "negligent hiring, supervision, retention . . . ."[4]

The jury returned a special verdict finding that LAUSD was negligent in hiring and supervising Martin-Brand, that Taylor was also negligent, and that both parties' negligence was a substantial factor in causing harm to Taylor. The jury awarded Taylor $30 million in noneconomic damages. It attributed 90 percent of fault to LAUSD, 10 percent to Taylor, and zero percent to Martin-Brand.

LAUSD filed a motion for JNOV and a motion for a new trial. Both motions asserted LAUSD was immune from liability for Dayvon's death pursuant to section 44808, which provides that "no school district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property," except when the district has specifically undertaken to assume responsibility for the pupil. Taylor opposed both motions,

---

[4]  LAUSD later described the remaining cause of action in a motion for nonsuit as "Wrongful Death predicated upon a theory of Negligent Hiring, Retention, and Supervision . . . ." On appeal, however, LAUSD asserts the action was *not* tried as a wrongful death case, while Taylor contends that it was. Because we conclude section 44808 provided LAUSD with statutory immunity from liability for all claims arising out of Dayvon's death, we need not resolve this issue.

arguing section 44808 does not shield LAUSD from liability for on-campus negligence resulting in off-campus injury.[5]

After hearing argument, the trial court denied both motions.

LAUSD timely appealed.

## DISCUSSION

### I. Standard of Review

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) "As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." (*Ibid*.) "If the appeal challenging the denial of the motion for judgment notwithstanding the verdict raises purely legal questions, however, our review is de novo." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.) Because the facts relevant to LAUSD's section 44808 immunity claim are not in dispute, we review the claim de novo.

---

[5] LAUSD also argued that its employees owed Taylor no duty; the jury's apportionment of fault was against the law and unsupported by sufficient evidence; and the damages award was against the law, based on an erroneous jury instruction, and was also excessive. Because these arguments are not relevant to the dispositive issue on appeal, we do not describe them in any further detail.

4

## II. LAUSD Is Immune from Liability for Dayvon's Off-campus Death Under Section 44808

Taylor proceeded to trial under the theory that LAUSD's negligence in hiring and/or supervising Martin-Brand caused Dayvon's death.

Public entities such as LAUSD are generally immune from liability. (Gov. Code, § 815.) However, "a public school district may be vicariously liable under [Government Code] section 815.2 for the negligence of administrators or supervisors in hiring, supervising and retaining a school employee" who harms a student. (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 879 (*C.A.*).) This potential liability "arises from the special relationship" between schools and students, "which relationship entail[s] the duty to take reasonable measures to protect [students] from injuries at the hands of others in the school environment." (*Id*. at p. 877.) Yet, a school district may be vicariously liable for negligent hiring only when "no immunity provision applies." (*Id*. at p. 866.) LAUSD contends it is immune from liability for Dayvon's death pursuant to section 44808. We agree.

Section 44808 provides: "Notwithstanding any other provision of [the Education Code], no school district . . . or any officer or employee of such district . . . shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district . . . or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such

responsibility or liability or has failed to exercise reasonable care under the circumstances."**6**

Section 44808 thus " 'limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking.' " (*Cerna, supra,* 161 Cal.App.4th at p. 1356.) The provision " ' "grants a district [and its employees] immunity [for a student's injuries] unless [the] student was (or should have been) directly supervised during a specified undertaking." [Citation.]' [Citations.]" (*LeRoy v. Yarboi* (2021) 71 Cal.App.5th 737, 743–744 (*LeRoy*).)

It is undisputed that Dayvon died away from school property and when school was not in session. Although he was killed by a school employee, Dayvon did not die while LAUSD was transporting him to or from school or while he was participating in a school-sponsored activity. Nor did LAUSD specifically assume responsibility for Dayvon's safety. Indeed, there is no evidence that any LAUSD employee knew Dayvon was interacting with Martin-Brand off campus during the winter break. Section 44808 squarely applies. (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 188–192 (*Ramirez*) [school district was immune from liability for student's off-campus death at a summer camp not supervised by the district, despite encouraging student to participate].)

Taylor nonetheless argues that section 44808 does not immunize LAUSD from liability for Dayvon's death because the

---

**6** As Taylor acknowledges, "the 'reasonable care' phrase 'does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the mentioned undertakings.' " (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1354 (*Cerna*).)

negligence in hiring, supervising, or retaining Martin-Brand occurred on school property, and that negligence resulted in the off-campus harm to Dayvon. She relies on cases in which it was alleged that a school district's negligence in failing to supervise a truant student, or in keeping students at school late, resulted in the students being harmed in traffic accidents once they left the school premises. (See, e.g., *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508 [school failed to supervise a student who then left campus without permission and was struck by a motorcycle once off school premises]; *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292 [teacher kept students after school; when they left school the crossing guard was no longer present and students were hit by car].) The *Hoyem* and *Perna* courts recognized that under some circumstances, section 44808 does not bar a school district from being "held liable for injuries suffered by a student off school premises and after school hours where the injury resulted from the school's negligence while the student was on school premises."[7] (*Brownell v. Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 794–795.)

---

[7] Taylor also cites *Calandri v. Ione Unified School Dist.* (1963) 219 Cal.App.2d 542, in support of the argument that section 44808 "has consistently been construed to permit claims against a school district for negligence that occurs on school property that results in off-campus harm to a student." However, as the *LeRoy* court noted, *Calandri* was decided before section 44808 was enacted in 1976. (*LeRoy, supra,* 71 Cal.App.5th at p. 743, fn. 2.) The *Calandri* court did not consider section 44808 or any other statutory bar to liability.

However, in *Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260 (*Mosley*), the court rejected an attempt to extend this exception to section 44808 immunity to a case in which the alleged on-campus negligence was the negligent hiring or supervision of a school employee.

In *Mosley*, a high school student died after falling off a van driven by her basketball coach, who was a former school employee. (*Mosley, supra*, 134 Cal.App.4th at p. 1262.) The student's parents filed a wrongful death lawsuit against the school district under a negligent hiring and supervision theory. (*Id.* at pp. 1262–1263.) The trial court concluded the district was immune under section 44808 and sustained its demurrer. (*Mosley,* at p. 1264.)

The appellate court affirmed, reasoning that section 44808 precluded liability because the student died off campus and her "injuries were not incurred during any official school-sponsored or sanctioned activity." (*Mosley, supra*, 134 Cal.App.4th at p. 1264.) The court rejected the appellants' contention that section 44808 did not immunize the school district for its negligence in hiring and supervising the coach. It reasoned that to hold otherwise would mean "there is no action by a teacher for which a district would not be liable so long as it may be traced back to negligent hiring and supervision. We are unaware of any case law that extends such liability that far, nor are we inclined to do so." (*Mosley,* at p. 1265.)

We agree with *Mosley* and conclude that section 44808 precludes liability under the circumstances presented here. Dayvon's death did not arise from a negligent act directly concerning him while on school premises, which carried over into off campus harm. Taylor did not allege that LAUSD was

8

negligent in supervising or caring for Dayvon while he was on school premises.  (*Ramirez*, *supra*, 105 Cal.App.4th at pp. 190–191 [distinguishing *Perna* and *Hoyem* on this basis].)  This case is therefore entirely unlike *Hoyem* and *Perna*.  Instead, as in *Mosley*, Taylor argues for an expansive approach that would expose a school district to liability for any employee's off-campus tort that could somehow be "traced back to negligent hiring and supervision." (*Mosley*, *supra*, 134 Cal.App.4th at p. 1265.)  This interpretation would run afoul of section 44808's express purpose of limiting school district liability for harm that occurs to students when they are not on school property or engaged in school-sponsored or school-supervised activities.

Taylor argues *Mosley* is distinguishable because the LAUSD employees who negligently hired and supervised Martin-Brand "were acting within the course and scope of their duties," whereas the plaintiff in *Mosley* withdrew allegations that the coach was acting within the scope of her employment.  Taylor draws the wrong comparison.  In this case, the parallel actor to the coach in *Mosley* is Martin-Brand, not the school district employees who hired and supervised him.  In *Mosley*, the plaintiffs alleged the school district was liable because it negligently hired and supervised the direct tortfeasor.  Taylor's argument here is the same.  Taylor does not otherwise challenge *Mosley*'s applicability to this case.

We additionally note that other courts since *Mosley* have narrowly construed the holding and reasoning of *Hoyem* and similar cases.  For example, in *LeRoy*, a high school student committed suicide at his home, during the summer break.  His parents sued the school district, contending the school was negligent in failing to address and prevent bullying the student

9

had experienced at school.  The parents alleged the bullying caused the student's suicide.

The school district argued that even if it breached a duty owed to the student and that breach caused the student's injuries, it was immune under section 44808.  (*LeRoy*, 71 Cal.App.5th at p. 742.)  The parents asserted that although the suicide occurred off campus and during a school break, under *Hoyem,* the district remained liable because its negligent failure to protect the student from bullying *on campus* led to his suicide. (*Id.* at p. 743.)

The reviewing court rejected the parents' argument.  The court explained that "section 44808 has been interpreted as imposing liability on school[ ] districts for a student's off-campus injury only when 'the student is involved in activities supervised or undertaken by the school.' [Citation.] In fact, the 'consensus of decisions from the Court of Appeal is that "section 44808 limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking" ' by the school during which a student is injured. [Citation.] . . . [¶] We agree with the great weight of authority that section 44808 ' "grants a district [and its employees] immunity [for a student's injuries] unless [the] student was (or should have been) directly supervised during a specified undertaking." [Citation.]' [Citations.]" (*LeRoy,* 71 Cal.App.5th at p. 743–744.)  There was no such specific undertaking in this case.

Taylor argues *LeRoy* is distinguishable because school districts owe a duty to students to use due care in hiring and supervising their employees.  For example, at oral argument, Taylor noted that the negligent hiring liability described in *C.A.*, *supra*, 53 Cal.4th 861, is premised on the district's duty to protect

10

students "in the school environment." (*Id*. at p. 877.) Taylor therefore contends *C.A.* makes any on-campus negligence actionable when it leads to off-campus injury, regardless of whether it takes the form of negligent hiring (as in this case) or negligent supervision of students (as in *Hoyem* and *Perna*). Yet, as Taylor acknowledged, *C.A.* did not address section 44808 immunity. Indeed, the alleged harm in *C.A.* occurred at least in part on campus, meaning section 44808 undisputedly would not apply. (*C.A.,* at p. 866.) *C.A.* also clearly stated its analysis was premised on the assumption that "no immunity provision applies." (*Ibid*.) *C.A.* can and must be harmonized with the express limitation on liability set forth in section 44808, immunizing school districts for harm to students that occurs entirely outside the school environment. (Cf. *LeRoy, supra*, 71 Cal.App.5th at p. 742 [school district was immune under section 44808 for liability premised on *C.A.*].)

Section 44808 makes clear that "school districts are not responsible for the safety of students outside school property absent a specific undertaking by the school district and direct supervision by a district employee." (*Cerna, supra*, 161 Cal.App.4th at p. 1357.) Dayvon died off campus and not during any school undertaking. Under these circumstances, LAUSD is statutorily immune from liability. Because we reverse the order and judgment on this basis, we need not consider LAUSD's other arguments.

11

## DISPOSITION

The judgment in favor of Kenya Taylor and the order denying LAUSD's motion for JNOV are reversed.  On remand, the trial court is directed to enter a new and different order granting LAUSD's JNOV motion and to enter judgment for LAUSD.  LAUSD shall recover its costs on appeal.


ADAMS, J.


We concur:



EDMON, P. J.



EGERTON, J.


12

Filed 7/2/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENYA TAYLOR, | B333718 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV33128) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed June 9, 2025, was not certified for publication in the Official Reports. Upon request by appellant and a non-parties to this action, and good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

EDMON, P. J.          EGERTON, J.          ADAMS, J.

1